UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARC WATERMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| TEGNA INC., HOWARD D. ELIAS, DAVE LOUGEE, GINA L. BIANCHINI, STUART J. EPSTEIN, LIDIA FONSECA, KAREN H. GRIMES, SCOTT K. MCCUNE, HENRY W. MCGEE, SUSAN NESS, BRUCE P. NOLOP, NEAL SHAPIRO, and MELINDA C. WITMER, | ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on February 22, 2022 (the "Proposed Transaction"), pursuant to which TEGNA Inc. ("TEGNA" or the "Company") will be acquired by Teton Parent Corp. ("Parent"), Teton Merger Corp. ("Merger Sub"), and other subsidiaries of Parent.

2. On February 22, 2022, TEGNA's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") with Parent, Merger Sub, and other subsidiaries of Parent. Pursuant to the terms of the Merger Agreement, TEGNA's stockholders will receive $24.00 in cash for each share of TEGNA common stock they own.

3. On March 25, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of TEGNA common stock.

9. Defendant TEGNA is a Delaware corporation and a party to the Merger Agreement. TEGNA's common stock is traded on the New York Stock Exchange under the ticker symbol "TGNA."

10. Defendant Howard D. Elias is Chairman of the Board of the Company.

11. Defendant Dave Lougee is President, Chief Executive Officer, a director of the Company.

12. Defendant Gina L. Bianchini is a director of the Company.

13. Defendant Stuart J. Epstein is a director of the Company.

14. Defendant Lidia Fonseca is a director of the Company.

15. Defendant Karen H. Grimes is a director of the Company.

16. Defendant Scott K. McCune is a director of the Company.

17. Defendant Henry W. McGee is a director of the Company.

18. Defendant Susan Ness is a director of the Company.

19. Defendant Bruce P. Nolop is a director of the Company.

20. Defendant Neal Shapiro is a director of the Company.

21. Defendant Melinda C. Witmer is a director of the Company.

22. The defendants identified in paragraphs 10 through 21 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

23. TEGNA is a media company with sixty-four television stations in fifty-one U.S. markets.

24. On February 22, 2022, TEGNA's Board caused the Company to enter into the Merger Agreement.

25. Pursuant to the terms of the Merger Agreement, TEGNA's stockholders will receive $24.00 in cash per share.

26. According to the press release announcing the Proposed Transaction:

TEGNA Inc. (NYSE: TGNA) and Standard General L.P. today announced that TEGNA and an affiliate of Standard General have entered into a definitive agreement under which TEGNA will be acquired by the Standard General affiliate for $24.00 per share in cash. The transaction has an equity value of approximately $5.4 billion and an enterprise value of approximately $8.6 billion, including the assumption of debt.

The transaction consideration represents a premium of approximately 39% to TEGNA's unaffected closing share price on September 14, 2021, the last full trading day prior to media speculation about a potential sale of TEGNA, and a premium of approximately 11% to TEGNA's all-time high closing price since separation from the Gannett publishing business in 2015. The transaction was unanimously approved by the TEGNA Board. . . .

Following the close of the transaction, Deb McDermott will become CEO and Mr. Kim will serve as Chairman of a new Board. Ms. McDermott currently serves as CEO of Standard Media and has more than 20 years of experience leading broadcast groups, including previously serving as COO of Media General and as CEO and President of Young Broadcasting. In these roles, she has served as a key member of the leadership teams responsible for the successful acquisition, integration, and operation of more than 90 stations. . . .

Transaction Details

The transaction is subject to approval by TEGNA shareholders, regulatory approvals, and other customary closing conditions, and is expected to close in the second half of 2022.

Under the terms of the definitive merger agreement, in addition to receiving $24.00 per share, TEGNA shareholders will receive additional cash consideration in the form of a "ticking fee" of $0.00167 per share per day (or $0.05 per month) if the closing occurs between the 9- and 12-month anniversary of signing, increasing to $0.0025 per share per day (or $0.075 per month) if the closing occurs between the 12- and 13-month anniversary of signing, $0.00333 per share per day (or $0.10 per month) if the closing occurs between the 13- and 14-month anniversary of signing, and $0.00417 per share per day (or $0.125 per month) if the closing occurs between the 14- and 15-month anniversary of signing.

Following the close of the transaction, TEGNA stations in Austin (KVUE), Dallas (WFAA and KMPX) and Houston (KHOU and KTBU) are expected to be acquired by Cox Media Group ("CMG") from Standard General.

Also after closing, Premion is expected to operate as a standalone business majority owned by Cox Media Group and Standard General.

Upon completion of the transaction, TEGNA will become a private company and its shares will no longer be traded on the New York Stock Exchange.

Financing

An affiliate of Standard General will hold substantially all of the voting, common equity in the new entity that is acquiring TEGNA, with CMG and funds managed by affiliates of Apollo Global Management to hold securities in the new entity that will be non-voting and non-attributable and with other investors holding non-voting interests. A syndicate of banks led by RBC Capital Markets will provide debt financing.

Advisors

J.P. Morgan Securities LLC is acting as lead financial advisor, with Greenhill & Co. also acting as a financial advisor to TEGNA, and Wachtell Lipton Rosen & Katz and Covington & Burling LLP are acting as its legal advisors. Moelis & Company and RBC are acting as financial advisor to Standard General and Fried Frank Harris Shriver & Jacobson LLP and Pillsbury Winthrop Shaw Pittman LLP are acting as its legal advisors.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

27. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

28. As set forth below, the Proxy Statement omits material information.

29. First, the Proxy Statement omits material information regarding the Company's financial projections.

30. The Proxy Statement fails to disclose: (i) all line items used to calculate the financial projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

31. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

32. Second, the Proxy Statement omits material information regarding the analyses

5

performed by the Company's financial advisors, J.P. Morgan Securities LLC ("J.P. Morgan") and Greenhill & Co. ("Greenhill").

33.　With respect to J.P. Morgan's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

34.　With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions.

35.　With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values; (ii) the individual inputs and assumptions underlying the discount rates and terminal growth rates; (iii) the net debt, redeemable noncontrolling interests, unfunded pension liability, and equity investments used in the analysis; and (iv) the fully-diluted shares outstanding used in the analysis.

36.　With respect to Greenhill's Precedent Transaction Multiples Analysis, the Proxy Statement fails to disclose: (i) the closing dates for the transactions; and (ii) the total values of the transactions.

37.　With respect to Greenhill's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values; (ii) the individual inputs and assumptions underlying the discount rates and multiples used in the analysis; (iii) the net debt, redeemable noncontrolling interests, unfunded pension liability, and equity investments used in the analysis; and (iv) the fully-diluted shares outstanding used in the analysis.

38.　With respect to Greenhill's Present Value of Future Share Price analysis, the Proxy Statement fails to disclose the individual inputs and assumptions underlying discount rate and multiples used in the analysis.

39. With respect to Greenhill's Precedent Premiums Paid analysis, the Proxy Statement fails to disclose: (i) the transactions observed in the analysis; and (ii) the premiums paid in the transactions.

40. With respect to Greenhill's Equity Research Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

41. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

42. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

43. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and TEGNA**

44. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

45. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. TEGNA is liable as the issuer of these statements.

46. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

47. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

48. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

49. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

50. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

51. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

52. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

53. The Individual Defendants acted as controlling persons of TEGNA within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of TEGNA and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the

8

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

56. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: March 30, 2022   **RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*